UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:17-CV-00060-GNS

ALLIANCE ENERGY AND ENGINEERING CORPORATION            PLAINTIFF

VS.

RONNIE CHARLES RODGERS &
R & R PLUS LLC            DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion of non-party Michael T. May, Ph.D. for a protective order, DN 23. Plaintiff Alliance Energy & Engineering Corporation has filed a response in opposition at DN 25 and May has replied at DN 26. The Defendants/Counter Claimants have not filed a response.

### Nature of the Case

According to Alliance's complaint, it is a corporation engaged in oil and gas well exploration and development. Defendant Ronnie Charles Rodgers held an assignment of an interest in an oil lease identified as the "Michael Murphy Lease." Rogers, in turn assigned his interest to Alliance, acting individually and on behalf of co-defendant R&R Plus, LLC. The contract between the parties obligated Rodgers to specified duties in operating and producing the well. Alliance contends that the defendants failed to perform under the contract and also that Rodgers made untrue representations about the well production. Alliance's complaint asserts causes of action for fraud, breach of contract, unjust enrichment, and punitive damages (DN 1).

The Motion for Protective Order

May states that defendant Rodgers is currently under indictment in the Eastern District of Kentucky, facing charges of fraud related to solicitation of investments in oil and gas well production ventures throughout Kentucky and Tennessee.[1] May contends the allegations in the complaint are similar to the indictment. The Complaint states:

> This is an action for damages arising out of the purchase of an oil lease in Overton County, Tennessee by Alliance Energy & Engineering Corporation from Ronnie Charles Rodgers, doing business through a Tennessee limited liability company named R&R Plus LLC., Ronnie Charles Rodgers committed fraud by misrepresenting the performance of the oil well associated with the lease and has breached the purchase agreement in several material respects.

(DN 1, p. 1). The indictment, in turn, states:

> The plan was to create an appearance of business legitimacy; obtain money from investors under falsely-created expectations of profit; obtain more money from investors than was necessary to drill the wells; go through the motions of drilling what the Operators expected to be dry holes or wells within minimal production; lull and placate complaining investors with false excuses for non-production; use large sums of investor money for personal expenses and purchases; and ultimately, discontinue any contract with the investors.

(DN 23, p. 3).

May is a Professor of Geology at Western Kentucky University. He also performs geological studies for oil and gas investors and operators, including Rodgers. May has also conducted studies for Kentucky Oil and Gas, Inc., in which he, Rodgers, and others have an ownership interest. Kentucky Oil and Gas has also sued Rodgers on a similar fraud allegation in a civil suit pending in this court.[2]

---

[1] Case number 3:17-cr-16 pending in the United States District Court for the Eastern District of Kentucky.
[2] Case number 1:16-cv-34-GNS-HBB

With regard to the pending criminal charges against Rodgers, May states "the United States Government is well aware of Dr. May's involvement in the facts underlying the Criminal Case, though he is not presently the target of an investigation. Dr. May is expected to be a material witness at the trial in the Criminal Case" (DN 23, p. 4). He seeks a stay of this action to protect him from giving a discovery deposition, at which be indicates he may refuse to answer questions and assert his rights under the Fifth Amendment. In the alternative, he asks that Plaintiff be permitted to question him only as to matters directly related to the Michael Murphy Oil Lease.

The Fifth Amendment states that "no person shall be . . . compelled in any criminal case to be a witness against himself. U.S. Const. amend. V. "The fifth amendment privilege not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." In re Morganroth, 718 F.2d 161, 164-65 (6th Cir. 1983).

In advocating for a stay of this action, May cites Eastwood v. United States, No. 2:06-cv-164, 2008 U.S. Dist. LEXIS 106777 (E.D. Tenn. Nov. 14, 2008), which set forth the following factors a court should consider in assessing the propriety of a stay:

> 1) The extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the criminal case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously, weighed against the prejudice to the plaintiffs caused by the delay; 4) the private interests of, and burden on, the defendants; 5) the interests of the courts; and 6) the public interest.

Id. at *6. This analysis has also been recognized in the Eastern District of Kentucky. *See* Sparkman v. Thompson, No. 08-01-KKC, 2009 U.S. Dist. LEXIS 57540, at *4 (E.D. Ky. July 6,

2009). However, this sort of analysis is not appropriate in the present circumstance. The analysis which May advocates looks to whether an action should be stayed to protect the Fifth Amendment interest of a party. Here, May is a non-party with no interest in the progress of the case beyond the giving of his own deposition. The question, therefore, is not whether this action should be stayed. The question is whether May should be protected from providing his discovery deposition.

A witness must show that there is a "real danger" and not a mere imaginary, remote or speculative possibility of prosecution.

> A witness risks a real danger of prosecution if an answer to a question, on its face, calls for the admission of a crime or requires that the witness supply evidence of a necessary element of a crime or furnishes a link in the chain of evidence needed to prosecute. In Hoffman, the Supreme Court held that a real danger of prosecution also exists where questions, which appear on their face to call only for innocent answers, are dangerous in light of other facts already developed. In such a situation a witness bears no further burden of establishing a reasonable cause to fear prosecution beyond asserting the privilege and identifying the nature of the criminal charge or supplying sufficient facts so that a particular criminal charge can reasonably be identified by the court. The witness has met his burden and the court does not need to inquire further as to the validity of the assertion of the privilege, if it is evident from the implications of a question, in the setting in which it is asked, that a responsive answer might be dangerous to the witness because an injurious disclosure could result. In appraising the claim, the court "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence."

In re Morganroth, 718 F.2d at 167 (citations omitted).

In Convertino v. United States DOJ, 795 F.3d 587 (6th Cir. 2015), the Sixth Circuit indicated that, even if criminal prosecution flowing from sworn testimony was unlikely, the standard is whether prosecution is possible. "The validity of an asserted Fifth Amendment

privilege, however, turns not on the probability or likelihood of prosecution, but rather on the possibility of prosecution." Id. at 594.

Here, May's motion makes the following observation regarding the prospect of prosecution:

> Dr. May does not know if he is actively under investigation; he has no reason to be. However, Dr. May has been interviewed by both a U.S. Postal Inspector and an investigator from the U.S. Securities and Exchange Commission related to the Criminal Case. And, the AUSA responsible for prosecuting the Criminal Case indicates that he is well-aware of Dr. May's relationship to the allegations in that case, and Dr. May is presently a material witness. Dr. May has done nothing that should be investigated and does not know where he stands in the Criminal Case, whether it is a material witness or something much worse.

(DN 23, p. 6). This generalized statement does not provide a sufficient basis upon which to determine whether May's assertion of privilege is justified.

> The Court must decide whether a witness's fears of self-incrimination are justified. [In re Morganroth, 718 F.2d at 164-65]. "A valid assertion of the fifth amendment privilege exists where a witness has reasonable cause to apprehend a real danger of incrimination." Id. Importantly, the Sixth Circuit has held that "[a] blanket assertion of the privilege by a witness is not sufficient to meet the reasonable cause requirement and the privilege cannot be claimed in advance of the questions. The privilege must be asserted by a witness with respect to particular questions, and in each instance, the court must determine the propriety of the refusal to testify." Id. "A valid assertion of the Fifth Amendment privilege exists where a witness has reasonable cause to apprehend a real danger of incrimination." Id. A witness must, however, show a real danger, and not a mere imaginary, remote or speculative possibility of prosecution. United States v. Apfelbaum, 445 U.S. 115, 128, 100 S. Ct. 948, 63 L. Ed. 2d 250, (1980).
>
> The Court will determine on a question-by-question basis whether Deborah and Gayle Ingersoll have reasonable cause to apprehend a real danger of incrimination. The Court will determine whether each question, on its face, "calls for the admission of a crime or requires that the witness supply evidence of a necessary element of

5

> a crime or furnishes a link in the chain of evidence needed to prosecute." Morganroth, 718 F.2d at 167; See also Hoffman v. United States, 341 U.S. 479, 486-87, 71 S. Ct. 814, 95 L. Ed. 1118 (1951). The court will only require the witness to answer if it is "perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer(s) cannot possibly have such tendency to incriminate." Convertino, 795 F.3d at 592.

United States v. Ingersoll, No. 14-cr-20216, 2015 U.S. Dist. LEXIS 139398, at *5-7 (E.D. Mich. Oct. 14, 2015). Here also the Court will determine on a question-by-question basis whether May has a reasonable cause to apprehend a real danger of incrimination.

May has also expressed concern that if he invokes protection under the Fifth Amendment, "Plaintiff could use that to amend its pleadings and seek an inference from the jury that Dr. May has done something wrong, which he has not. In short, Dr. May is caught in an unfortunate trap." (DN 23, p. 7). While he may find himself "caught between a rock and a hard place" in this regard, nonetheless "[i]n a civil case, a party's invocation of the privilege against compulsory self-incrimination gives rise to a legitimate inference that the witness was engaged in criminal activity." Davis v. Mutual Life Ins. Co., 6 F.3d 367, 384 (6th Cir. 1993). This is not, however, "a blanket rule that allows adverse inferences to be drawn from invocations of the privilege against self-incrimination under all circumstances in the civil context." Zertuche v. United States, No. 2:15-cv-02284-JPM-dkv; 2:12-cr-20190-JPM-3, 2017 U.S. Dist. LEXIS 215882, at *40-41 (W.D. Tenn. Sept. 12, 2017) (*quoting* Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1264 (9 Cir. 2000)). Whether the inference will apply in this case will be determined by the trial court balancing the interests of the party claiming protection against the adversary's entitlement to equitable treatment. Id. at 41 (*citing* SEC v. Graystone Nash, Inc., 25 F.3d 187, 192 (3d Cir. 1994)).

As to May's alternative argument that if his deposition is to be taken, the scope of questioning should be limited to matters related to the Michael Murphy Lease, such a restriction would not be consistent with the broad latitude afforded discovery under Rule 26(b)(1), whereby a party "may obtain discovery regarding any nonprivileged matter that is relevant to a party's claim or defense." As with any case, however, the scope of discovery is not unfettered. The current version of the rule and the associated commentary demonstrate that a party is to be held to discovery within the scope of the claims and defenses asserted in the pleadings, and may not employ discovery as a means of investigating whether additional claims might be available. The 2000 amendments to Rule 26(b)(1) replaced prior language defining relevant discovery as that relating to the "subject matter" of the litigation with the more restrictive "claim or defense" language. "The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Fed. R. Civ. P. 26(b)(1) Advisory Committee's Note (2000 Amendment). "This limitation ensured that discovery would no longer be used to troll for new claims or causes of action, but that the requested discovery was relevant to the specific claims and defenses before the court." Franklin v. United States, No. 12-1167 KBM/LFG, 2013 U.S. Dist. LEXIS 191416, at *5 (D.N.M. Aug. 28, 2013). Consequently, while Plaintiff's questioning will not be confined to matters relating to the Michael Murphy Lease, all questioning must be justified as relevant to Alliance's claims against the current Defendants set forth in the complaint.

## ORDER

**IT IS HEREBY ORDERED** that non-party Michael T. May, Ph.D.'s motion for a protective order, DN 23, is GRANTED IN PART and DENIED IN PART. Neither the action nor the taking of May's discovery deposition is stayed. The parties are to coordinate with the undersigned to schedule May's discovery deposition at the Bowling Green Division Courthouse at a time when the undersigned is available to preside. The undersigned will address any Fifth Amendment claim by May on a question-by-question basis. The undersigned will likewise rule on any objection as to the relevance of any question.

Copies: Counsel